DAVID E. EASH
deash@ewinganderson.com
Ewing Anderson, P.S.
221 N. Wall, Suite 500
Spokane, WA 99201
(509) 838-4261
Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

In Re:

SHUMATE SPOKANE, LLC.,

    Debtor.

NO. 09-05081-FLK11

**ORDER ON DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105, 363, & 364 AND FED. R. BANKR. P. 2002, 6004 AND 6006 FOR AN ORDER APPROVING BID PROCEDURES AND RELATED RELIEF**

This matter came before the Court on April 13, 2010 for a hearing (the "Hearing") on the Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363, and 364 and Fed.R.Bankr.P. 2002, 6004 and 6006 for an Order Approving Bid Procedures and Related Relief (the "Motion"), and upon due and proper consideration thereof, and having considered the statements of counsel and evidence presented at the Hearing and the applicable law, and it appearing that the relief requested in the Motion is in the best interests of Debtor, its estate and creditors and that notice of the Motion was appropriate under the circumstances, and upon the record herein and that the notice periods and other provisions set forth in this order are necessary and appropriate so that a sale to either the Stalking Horse Bidder or to any overbidder can be approved and closed on an expedited basis because of the economic losses that continue each day that the dealership business remains closed;

and after due deliberation thereon; and sufficient cause appearing therefore, IT IS HEREBY FOUND, ORDERED, ADJUDGED, AND DECREED THAT:

1. The Motion is brought pursuant to 11 U.S.C. §§ 105, 363, and 364 and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The Motion is granted to the extent provided by this order. Any objections to the relief sought in this Motion that have not previously been resolved or withdrawn are hereby overruled on their merits, except as set forth herein. This Order shall be valid, binding on all parties-in-interest and fully effective immediately upon entry.

3. The following terms and procedures govern the submission of competing bids for all or a portion of the Offered Assets and for the conduct of an auction. All time periods set forth in this order include any additional notice periods required by FRBP 9006(f) or otherwise. All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion with the exception of the following:

    a. "Stalking Horse" shall mean Seven Oaks Motor Sports, LLC, an Idaho LLC.

    b. "Stalking Horse Asset Purchase Agreement" shall mean that certain Asset Purchase Agreement signed by the Stalking Horse and the Debtor.

c. "Qualified Buyer" shall mean a potential buyer that demonstrates to the satisfaction of Harley-Davidson Motor Company ("HDMC") that, subject to certain conditions, it can potentially meet HDMC's uniformly applied written standards, qualifications and requirements for dealership owners and operators.

4. The Bidding Procedures are as follows:

   a. <u>Stalking Horse</u>. The Stalking Horse shall submit to HDMC a copy of the Stalking Horse Asset Purchase Agreement and all information reasonably requested by HDMC to determine whether the Stalking Horse is qualified to own and operate a Harley-Davidson dealership. Within 30 days of the date upon which such information is provided to HDMC, HDMC will either disapprove the Stalking Horse or Approve the Stalking Horse as a Qualified Buyer. HDMC's approval shall not be unreasonably withheld in accordance with all applicable law.

   b. <u>Subject to Higher and Better Offers</u>. The Stalking Horse Asset Purchase Agreement shall be subject to higher and better offers from potential buyers at an Auction. The Auction shall be conducted at the offices of Ewing & Anderson P.S. in Spokane, WA, or an alternate location to be selected by the debtor, on a date to be announced by the Debtor but only after approval of the Stalking Horse as a Qualified Buyer by HDMC. The Auction Sale shall be scheduled seven (7) days after expiration of the Bid Deadline set forth below.

   c. <u>Bid Deadline</u>. Within three (3) days after the approval of the Stalking Horse as a Qualified Buyer by HDMC, the deadline for submitting competing bids shall be set by the Debtor but the Bid Deadline shall be not more than 15 days after the Debtor announces the deadline as provided below (the "Bid Deadline"). The Debtor shall within the same 3 day period announce the Bid Deadline by immediately mailing or providing electronic notice of a copy of the Bidding Procedures Order and a corresponding notice to creditors to all persons and entities on the master mailing list for this case after the Bidding Procedures Order is approved by the Court. The notice to creditors shall announce the last day to submit competing bids, the Auction sale date, and other information required by this order. This notice may also state the time of the hearing to consider final approval of the sale of the Spokane Shumate assets to the Stalking Horse or to any successful overbidder. If the Debtor receives no other offers

with all of the information set forth below from a Qualified Bidder (as defined below) on or before the Bid Deadline, the debtor or the Stalking Horse shall immediately seek a court order approving the Stalking Horse Asset Purchase Agreement.

d. <u>Submission of Information to HDMC</u>. Upon execution of a Qualified Bidder Asset Purchase Agreement (as defined below) and prior to the expiration of the Bid Deadline set forth above, (1) the Debtor will submit to HDMC such Qualified Bidder Asset Purchase Agreement and (2) the potential buyers under such Qualified Bidder Asset Purchase Agreement will immediately submit to HDMC a completed application and comprehensive financial statements for each person having a prospective direct or indirect ownership interest in the dealership. Thereafter, the potential buyers shall promptly submit to HDMC all information reasonably requested by HDMC to determine whether the potential buyer is a Qualified Buyer. Failure by any potential buyer to submit all information required by HDMC within 10 days after receiving a written request for information from HDMC shall constitute good cause for the debtor to disregard the asset purchase agreement submitted by the potential buyer and, if there are no other qualified bidders to immediately proceed with court approval of the Stalking Horse Asset Purchase Agreement.

e. <u>HDMC Approval</u>. Within 30 days of the date upon which the Debtor provides HDMC a Qualified Bidder Asset Purchase Agreement and the potential buyer provides HDMC all information reasonably requested by HDMC, HDMC will either disapprove the potential buyer because it is not a Qualified Buyer or approve the potential buyer as a Qualified Buyer. HDMC's approval of potential buyers as Qualified Buyers shall not be unreasonably withheld in accordance with all applicable law. The sale of the Offered Assets is subject to (1) Bankruptcy Court approval and (2) HDMC's final approval of the Stalking Horse or any overbidder as a Harley –Davidson dealer/operator using reasonable and uniformly applied written standards and qualifications.

f. <u>Delivery Requirements for Qualified Bidders</u>. In the event a potential buyer desires to propose a bid for the purchase of the Subject Assets, such interested party will be required to deliver to Debtor's counsel, on or before the Bid Deadline, the following items in order to constitute a "Qualified Bidder": (i) an original executed asset purchase agreement (the "Qualified Bidder Asset Purchase Agreement") in the form provided by the Debtor which shall be the same form as the Stalking Horse Asset Purchase Agreement, (ii) a cash deposit in an amount of $100,000.00 or such other amount as Debtor may agree to in writing, which shall be delivered to and deposited with Feltman, Gebhardt, Greer & Zeimantz, P.S. ("Escrow Agent") and, (iii) detailed financial

statements and documentation including, but not limited to, a current balance sheet and profit and loss statement, tax returns, and other documentation demonstrating the bidder's ability to promptly close the transaction. When preparing a Qualified Bidder Asset Purchase Agreement, other than changes to the purchase price and name of purchaser, changes to the Stalking Horse Asset Purchase form are highly discouraged. Any and all changes to such form must be clearly marked. The Debtor has the right, in its business discretion, to (i) reject any proposed Qualified Bidder Asset Purchase Agreement, (ii) deem any party a Qualified Bidder if it meets the criteria set forth in this order or (iii) to deem any party not to be a Qualified Bidder should they fail to timely meet the above criteria. All of the information described above must be submitted to the debtor by the Bid Deadline before any potential buyer will be considered a Qualified Bidder. Upon becoming a Qualified Bidder, such bidder shall immediately seek to become a Qualified Buyer in accordance with the provisions of subparagraphs (d) and (e) above and shall immediately submit to HDMC, completed new dealer application forms and complete and accurate financial statements for each person who will be proposed as an individual owner of the dealership entity.

g.  All Cash Purchase Price and No Closing Contingencies Requirements. Without limiting the terms of a Qualified Bidder's Asset Purchase Agreement the agreement must provide that (i) the purchase price shall be "all cash" payable at the closing and (ii) the bidder's obligation to close shall not be conditioned upon the completion of any additional due diligence with respect to the Subject Property or any other contingency, other than the approval by the Bankruptcy Court of the terms and provisions of the Qualified Bidder's Asset Purchase Agreement; provided, however, that Secured Lenders may credit bid their secured claims to the extent provided in 11 USC § 363(k).

h.  Required Amount of First Overbid. The purchase price set forth in the Stalking Horse Asset Purchase Agreement shall be deemed the first bid at the Auction. The first overbid by any Qualifying Bidder must exceed the Stalking Horse's proposed purchase price by at least $125,000.00 to constitute a qualifying bid for consideration by the Debtor. After such initial overbid, the successful bidder will be determined at the Auction Sale and all subsequent overbids shall be made in increments of no less than $25,000.00 each.

i.  Auction. Only the Stalking Horse, Qualified Bidders, Secured Lenders and their counsel may participate in the Auction. Each bidder must disclose its true identity and all material terms of each bid must be fully disclosed throughout the Auction. The Auction shall start with the Stalking Horse Bid and shall proceed until there are no further bids

and the Debtor has determined who the successful bidder is. The determination of who is the successful bidder shall be made by the the Debtor based on the highest bid and other criteria set forth in this order. Once bidding is closed, the Debtor shall not consider any further bids. Competing bids shall be open, binding and irrevocable through the Court's entry of an Order approving the sale of the Subject Property. Representatives and counsel for HDMC, HDCC, and other parties in interest may attend the auction provided they notify counsel for the Debtor at least 3 days prior to the auction.

j. <u>Approval by Bankruptcy Court</u>. Notwithstanding anything to the contrary set forth in the Stalking Horse Asset Purchase Agreement, Qualified Bidder's Asset Purchase Agreement, or these Procedures, the entry of an order by the Bankruptcy Court approving the Stalking Horse Asset Purchase Agreement, or Qualified Bidder's Asset Purchase Agreement and successful bidder shall be required before any Stalking Horse Asset Purchase Agreement or Qualified Bidder's Asset Purchase Agreement and/or any bidder shall be deemed to have been accepted as the "winning bidder" by the Debtor. A hearing on the approval of the sale to the successful bidder pursuant to Section 363 of the Bankruptcy Code shall occur on a date to be set as soon as possible but, in any event, will be at least two days after an Auction Sale is conducted. At such hearing, the Court shall consider the assumption and assignment of any executory contract involved in the sale.

k. <u>Failed Bidder</u>. If the successful bidder fails to be approved as a Qualified Buyer or fails to obtain HDMC's final approval as a dealer/operator or fails to close the sale for any reason, then if the successful bidder and the Stalking Horse are the only two bidders, the Stalking Horse shall be declared the successful bidder at the price stated in the Stalking Horse Asset Purchase Agreement. If there are two or more bidders other than the Stalking Horse at the auction and the highest bidder fails to be approved by HDMC, then, subject to subparagraph 4(m) below, the auction sale shall be repeated with the Stalking Horse Asset Purchase Agreement price being the opening bid for the second auction sale and any such second auction sale shall exclude the failed bidder and shall include only the remaining bidders. If no other bidder elects to bid at the second or any succeeding auction sale other than the Stalking Horse, then the Stalking Horse bidder shall be declared the successful bidder at the price stated in the Stalking Horse Asset Purchase Agreement This process shall continue until a Qualified Buyer closes the sale or no other Qualified Buyers have bid. Any bidder that participates in the auction sale and is declared the highest bidder and then fails to be approved by HDMC as a

Qualified Buyer or fails to obtain HDMC's final approval as a dealer/operator or fails to close for any reason shall forfeit $20,000 of its deposit as liquidated damages for the delay in closing any sale by the bankruptcy estate resulting from the unqualified buyer's participation in the overbid process.

l. <u>Closing for Highest Bidder</u>. The sale to the successful bidder, as determined by the Debtor and approved by the Bankruptcy Court, shall close no later than the 16th day following the entry of an Order approving the sale. An Order approving the sale shall not issue until the successful bidder is approved as a Qualified Buyer by HDMC. If the successful bidder does not close on such 16th day in accordance with the approved Stalking Horse Asset Purchase Agreement or Qualified Bidder's Asset Purchase Agreement, for reasons other than the failure of a condition precedent set forth in the Stalking Horse Asset Purchase Agreement or Qualified Bidder's Asset Purchase Agreement, then, such winning bidder shall immediately forfeit its purchase deposit to the Debtor.

m. <u>Failed Sale</u>. If the successful bidder cannot timely close the approved sale transaction, that bidder shall forfeit its deposit and the next highest bidder shall have five (5) days after receiving HDMC's final approval as a dealer/operator or sixteen (16) days from the date of the failed closing, whichever period is later, to close its own sale pursuant to its approved bid. In the event that the next highest bidder also fails to timely close the sale transaction, that bidder's deposit shall also be forfeited. The deadline to close the sale transaction and forfeiture of bid deposits shall also apply to any and all subsequent bidders.

n. <u>Bid Protection - Break-Up Fee for Stalking Horse</u>. Provided that the Stalking Horse is not in default under the its Stalking Horse Asset Purchase Agreement and has not otherwise terminated its Stalking Horse Asset Purchase Agreement, then, in the event the Stalking Horse is not the successful bidder at the Auction pursuant to Paragraph 4(k) above, the Stalking Horse may be granted limited "bid protection" in the form of a "break-up fee" ("Break-up Fee") in an amount not to exceed $50,000.00 subject to court approval at the sale hearing. Only the Stalking Horse is entitled to recover a Break-up Fee. Potential purchasers should not include a Break-up Fee clause in a Qualified Bidder's Asset Purchase Agreement. To the extent that a Qualified Bidder's Asset Purchase Agreement contains a Break-up Fee clause it shall be deemed void.

o. <u>Payment of Break-Up Fee</u>. Upon closing of the sale, the Debtor shall be authorized, if the provisions of subparagraph (n) above are met, to pay the Break-up Fee to the

Stalking Horse solely from the cash proceeds of the sale, subject to the rights of Landlord-Latus who shall retain the right to object to payment of the Breakup Fee prior to its distribution. Notice of distribution of the Breakup Fees shall be given to Latus.

p. <u>Deposits</u>. Upon closing of the sale, deposits that are not (i) forfeited or (ii) applied to the purchase price of a successful sale, shall be returned to the bidder.

5. This Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise.

Presented by:

EWING ANDERSON, P.S.

By:_____
DAVID E. EASH WSBA #6684
Attorneys for Debtor

So Ordered this 14th day of April, 2010

Frank L. Kurtz
Judge