DAVID E. EASH
deash@ewinganderson.com
Ewing Anderson, P.S.
221 N. Wall, Suite 500
Spokane, WA 99201
(509) 838-4261
Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re:<br><br>SHUMATE SPOKANE, LLC.,<br><br>    Debtor. | NO. 09-05081-FLK11<br><br>SHUMATE SPOKANE, LLC'S AMENDED MOTION (I) TO SELL CERTAIN ASSETS TO A STALKING HORSE OR OTHER SUCCESSFUL BIDDER AT AUCTION, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363(f); (II) TO ASSUME AND ASSIGN OR REJECT CERTAIN LEASES IN CONNECTION WITH THE SALE PURSUANT TO 11 U.S.C. § 365; (III) TO TERMINATE THAT CERTAIN DEALERSHIP AGREEMENT PURSUANT TO 11U.S.C. § 363; AND (IV) FOR RELATED RELIEF |

   Shumate Spokane, LLC ("Shumate Spokane"), as debtor and debtor in

possession (the "Debtor"), by and through its undersigned counsel, and pursuant to

§§ 105, 363 and 365 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*

(the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), moves this Court (the "Motion") to enter an order: (i) authorizing the Debtor to sell (the "Proposed Sale") certain assets (the "Subject Property") to **SEVEN OAKS MOTOR SPORTS, LLC**, an Idaho LLC or its assigns ("Seven Oaks" or "Stalking Horse") pursuant to a proposed Asset Purchase Agreement, as amended,  (the "Stalking Horse Asset Purchase Agreement"), or at auction in compliance with court approved Bidding Procedures as set forth in  the court approved Bidding Procedures Order ("Bidding Procedures Order") (Docket # 297 ; (ii) authorizing the Debtor to either (1) assume and assign or (2) reject certain unexpired leases; (iii) authorizing the Debtor to terminate the Harley Davidson Motorcycle Dealer Contract (as hereinafter defined) with Harley-Davidson Motor Company contingent upon the occurrence of certain events described herein; and, (iv) granting such other and further relief as this Court deems necessary. In support of this Motion, the Debtor states as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtors' chapter 11 cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.     On September 9, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") with the Clerk of this Court in case number 09-05081-K11, along with Shumate Tri-City, LLC ("Shumate Tri-City") who is the debtor in case number 09-05080-K11 (hereinafter Jointly referred to as the "Shumate Entities").

3.     Through the filing of these Bankruptcy proceedings, the Shumate Entities seek to accomplish an orderly liquidation of their businesses that will maximize the recovery to all of the creditors, whether secured, unsecured, or with priority pursuant to the Bankruptcy Code. The Shumate Entities believe the value of their assets can be best realized through an orderly sale of their assets to the Stalking Horse or winning bidder at an auction.

4.     The Shumate Entities own motorsport dealerships which sell Harley-Davidson, Honda and Suzuki products in Washington and Idaho. Shumate Tri-City, LLC, is the dealer/operator under dealer agreements with Harley-Davidson Motor Company, ("HDMC"), American Honda Motor Company, Inc. ("Honda") and American Suzuki Motor Company ("Suzuki") with a retail location in Kennewick, WA. Shumate Spokane LLC is an authorized Harley-Davidson dealer with retail locations in Spokane, WA and Lewiston ID.

5.     Harley-Davidson Credit Corporation ("HDCC"), has provided flooring financing for Shumate Spokane for the purchase of motorcycles and parts.

6.     In addition to the floor plan lender, Harley-Davidson Credit Corporation, Debtor is indebted to the following creditors who may claim a security interest or lien upon its assets:

    a.     GE Capital Franchise Finance Corporation ("GE Capital Franchise")

    b.     Columbia River Bank ("CRB")

    c.     Snap On Credit, LLC ("Snap On Credit") and

    d.     The State of Washington Department of Revenue ("DOR")

Hereinafter, HDCC, GE Capital Franchise, CRB, Snap On Credit and DOR will be jointly referred to as the ("Secured Lenders"). On November 11, 2009, the Shumate Entities filed an Adversary Proceeding to determine the validity, priority and extent of the Secured Creditors' liens in Adversary Proceeding No. 09-80158-FLK (the "Lien Priority Adversary Proceeding"). If necessary, the distribution of sale proceeds from the sale of the Debtor's assets hereunder will be determined in accordance with the Lien Priority Adversary Proceeding.

## RELIEF REQUESTED

7.    By this motion, the Debtor seeks entry of an order (the "Sale Order"), among other things: (i) authorizing the sale of certain assets of the estate to the Stalking Horse or a higher bidder; (ii) approving the Debtor's decision to either (1) assume and assign or (2) reject certain leases (as hereinafter defined); (iii) approving the Debtor's termination of the Harley-Davidson Dealer Contract (as hereinafter defined); and, (iv) granting such other and further relief as this Court deems necessary.

## THE PROPOSED SALE OF SUBJECT PROPERTY

8.    The Debtor is in the process of liquidating its assets in order to effectuate maximum distribution to its creditors. The Debtor believes the sale of the Subject Property in accordance with the Stalking Horse Asset Purchase Agreement and in compliance with the Bid Procedure Order entered herein on April 14, 2010 (Docket # 297), is the most efficient and economic way to liquidate the Subject Property.

9.    In accordance with the Bid Procedures Order, and subject to the Approval of the Stalking Horse as a Qualified Buyer, if Qualified Bidder's Asset Purchase Agreements (as defined in the Bid Procedures Order) are timely delivered to the Debtor, the Debtor will conduct an auction (the "Auction") of the Subject Property on May 21st, 2010, at 8:30 a.m. Pacific Daylight Time at Ewing Anderson, P.S. 221 N. Wall St. suite 500, Spokane, WA. (or at such other time and

place as the Debtor will determine in its sole and absolute discretion), at which time the best bidder (the "Best Bidder") will be selected. The Debtor asks that the final hearing (the "Sale Hearing") on this motion to obtain the proposed Sale Order be heard as soon as practicable after the Auction. If, however, no Qualified Bidder's Asset Purchase Agreements are submitted before the Bid Deadline or no other Qualified Bidder submits a bid at an Auction, then the Debtor requests that the Stalking Horse Asset Purchase Agreement be approved immediately.

10. Pursuant to Bankruptcy Rule 6004(c) and Section 363(f) of the Bankruptcy Code, the proposed sale shall be free and clear of all liens, claims, interests and encumbrances, except as otherwise agreed by the parties. The Debtor requests the Court order that any liens of secured lenders and the liens, if any, of taxing authorities shall attach to the proceeds of the proposed sale, with the same priority and validity that such liens exist on the Subject Property. The debtor asks that any order approving this sale find that the Stalking Horse Bidder or any other successful purchaser is not a continuation of or a successor to the debtor or its estate and that there is no continuity of enterprise between the debtor and any purchaser.

11. The Debtor holds title to the Subject Property, which is defined in detail in the Stalking Horse Asset Purchase Agreement and is made up of the authorized Harley-Davidson dealership located at 6815 E. Trent Avenue, Spokane,

WA (the "Dealership"), including all of the Debtor's new and used motorcycles, parts, fixed assets such as furniture and computer equipment, miscellaneous inventories, goodwill and intangibles along with all of the debtor's assets located at the debtor's secondary location in Lewiston , Idaho..

12.   Soon after the filing of these bankruptcy cases, the Shumate Entities began marketing the Subject Property. Since the withdrawal and termination of the Ride Now Properties , LLC, offer,  the highest and best offer received by the Debtor to purchase the Subject Property was received from the Stalking Horse. That offer is reflected in the proposed Stalking Horse Asset Purchase Agreement, a copy of which is attached hereto as Exhibit A.

13.   The Debtor and Shumate Entities have determined that a sale of the Subject Property to the Stalking Horse (subject to better offers in an auction) would be in the best interest of the Debtor's estate and creditors because it would maximize the value from this asset.

14.   Pursuant to the Stalking Horse Asset Purchase Agreement, after approval by this Court, the Subject Property will be sold to the Stalking Horse  or assigns for the purchase price of: (1) Three Million One Hundred Seventy-Five Thousand and 00/100 Dollars ($3,175,000.00), subject to the adjustments described in Sections 3.2 and 3.3 and other provisions of the Stalking Horse Asset Purchase Agreement, plus the assumption of certain liabilities set forth in Section

2.4 of the Stalking Horse Asset Purchase Agreement (collectively, the "Purchase Price"), free and clear of all liens, claims, interests, and encumbrances (but subject to better bids).

15.     Subject to the terms and conditions set forth herein and in the Stalking Horse Asset Purchase Agreement and subject to the Auction, the Stalking Horse will purchase the Subject Property for the Purchase Price, subject to the prior approval of the Stalking Horse by HDMC.

16.     The Subject Property consists of all of the Debtor's rights, title, claims and interests therein and all goodwill associated therewith.

17.     The Stalking Horse has deposited Twenty Thousand Dollars ($20,000.00) (the "Deposit") into escrow held by FELTMAN, GEBHARDT, GREER & ZEIMANTZ, P.S. ("Escrow Agent"). The Deposit will be allocated to the sale of the Subject Assets under the Stalking Horse Asset Purchase Agreement. The balance of the Purchase Price will be paid at closing in cash funds. The Deposit shall be: applied to the Purchase Price at closing, if closing occurs; refunded to the Stalking Horse, if the Stalking Horse Asset Purchase Agreement is properly terminated for a reason other than the Stalking Horse's default in its obligation to close there-under (or the Stalking Horse is not the Best Bidder); or forfeited to the Debtor as liquidated damages, if the Stalking Horse Asset Purchase

Agreement is terminated on account of the Stalking Horse's default in its obligation to close there-under.

18.    One of the conditions precedent to consummation of the Stalking Horse Asset Purchase Agreement is the entry by this court of a final and non appealable Sale Order approving the sale of the Subject Property as specifically provided in the Stalking Horse Asset Purchase Agreement and free and clear of all liens, claims, interests, and encumbrances pursuant to 11 U.S.C. § 363.

19.    Unless otherwise agreed by the Debtor and the purchaser, the closing shall be held at the offices of the Escrow Agent, in Spokane, WA within seven business days after the entry of the Sale Order (the "Closing Date").

## ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES

20.    The Subject Property includes the following leases and executory contracts:

a.    Dealership Site Lease for the retail dealership premises located at 6815 E. Trent Avenue, Spokane, WA, wherein the Debtor is tenant and George Latus LLC is the landlord (the "Lessor"). A copy of the Lease is attached hereto as Exhibit B. To consummate the proposed sale, the Debtor must either (i) assume and assign the current Lease to the Stalking Horse (or the successful bidder at the Auction) or (2) reject the Lease to allow the

Stalking Horse (or Best Bidder) to enter into a new lease or lease for the Premises.

b.    Dealership Site Lease for the retail dealership premises located at 2408 N. South Highway, Lewiston, ID, wherein the Debtor is tenant and Susan Mellinger is the landlord (the "Lessor"). A copy of the Lease is attached hereto as Exhibit C. To consummate the proposed sale, the Debtor must either (i) assume and assign the current Lease to the Stalking Horse (or the successful bidder at the Auction) or (2) reject the Lease to allow the Stalking Horse (or Best Bidder) to enter into a new lease or lease for the Premises.

c.  All other executory contracts identified in the Stalking Horse Asset Purchase Agreement.

21.    If the Leases are to be assumed and assigned, the Landlords shall be adequately assured of future performance by the Stalking Horse. The Stalking Horse shall be financially able to perform the Debtor's obligations under the leases, thus adequately assuring future performance by the Stalking Horse under the leases. Further, the Debtor will consider the financial ability of any party that submits a bid to purchase the Subject Property to perform the Debtor's obligations under the leases. At the Sale Hearing, the Debtor will demonstrate that the Stalking Horse or the

successful bidder at the Auction has the ability to perform the lease obligations if any of the leases are to be assumed or assigned.

## TERMINATION OF THE DEALERSHIP AGREEMENT

22.    A condition precedent to the proposed sale is approval by HDMC of the Stalking Horse or other successful bidder as a replacement dealer for Shumate Spokane. In order to consummate the proposed sale, the dealer agreement by and between the Debtor and HDMC must be terminated in order for the Stalking Horse to enter into a replacement dealer agreement upon the closing of the Proposed Sale.

23.    The termination of the Dealership Agreement is contingent upon the successful sale of the Subject Property, approval of the winning bidder by HDMC, and HDMC entering into a replacement dealer agreement with the winning bidder.

24.    Accordingly, the Debtor seeks the Court's permission to terminate the Dealership Agreements.

## BASIS FOR RELIEF

### A. The Proposed Sale of The Subject Property Is Permitted Under 11 U.S.C. § 363

25.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A

debtor-in-possession is given these rights by § 1107(a) of the Bankruptcy Code. 11 U.S.C. § 1107(a). Moreover, § 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

## Business Judgment

26. Although § 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, sales of assets of a debtor should be authorized when there is an articulated business justification for doing so. *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 515 (Bankr. N.D. Ala. 2002). *See also, e.g., Stephens Indus., Inc. v. McClung*, 789 F. 2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (Bankr. W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991).

27. Whether a transaction has a sufficient articulated business justification depends on the facts of the case. *See In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986). A bankruptcy court should consider "all salient factors pertaining to the proceeding and accordingly, act to further the diverse interests of the debtor, creditors and equity holders alike." *Id.*; *Lionel*, 722 F.2d at 1071. Relevant factors may include: "the proportionate value of the asset to the estate as

a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition on the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value." *See Continental*, 780 F.2d at 1226; *Lionel*, 722 F.2d at 1071; *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D.Del. 1991); *In re Condere Corporation*, 228 B.R. 615, 628 (Bankr. S.D. Miss. 1998).

28.     Courts have made it clear that a showing of a sound business justification need not be unduly exhaustive but, rather, a § 363 movant is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *Lionel*, 722 F.2d at 1071.

29.     In addition, the Proposed Sale to the Stalking Horse is not a *sub rosa* plan of reorganization because it seeks only to liquidate assets and will not restructure the rights of creditors. *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986); *PBGC v. Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir.) *reh'g denied*, 705 F.2d 450 (5th Cir. 1983); *see also In re Naron & Wagner, Chartered*, 88 B.R. 85 (Bankr. D. Md 1988)

(proposed sale is not a *sub rosa* plan because it seeks only to liquidate assets and will not restructure the rights of creditors).

30.     Sound business reasons exist to sell the Subject Property. The proposed Bidding Procedures enable the highest price to be received for the Subject Property. The competitive bidding at the auction will ensure that the sale price is arrived at in good faith. Further, the auction will enable the Subject Property to be sold in the most efficient and expeditious fashion, thereby minimizing the potential loss in value of the Subject Property.

31.     Given itsfinancial condition, a sale of the Subject Property pursuant to the proposed  Bidding Procedures is the best option available to the Debtor that will maximize value for its creditors. Moreover, attempting to complete a sale pursuant to a chapter 11 plan would be an inherently longer process, resulting in a significant risk that the price a willing buyer may pay for the Subject Property would substantially   deteriorate to the detriment of the Debtor's creditors. Moreover, delay of the sale may well provoke the Stalking Horse to terminate the Stalking Horse Asset Purchase Agreement and result in an alternative outcome that may yield far less value.  The Subject Property has already been marketed for sale and exposed to the market for many months and the Stalking Horse Asset Purchase Agreement  and  the  sale  process  described  in  this  motion    may  be  the  last opportunity for the debtor to negotiate the sale of the Subject Property.

32.     As explained above, a marketing process was conducted in order to obtain the highest and best price for the Subject Property. In addition, to confirm that the Stalking Horse's offer is the best possible purchase price for the Subject Property, the Stalking Horse's bid will be tested through the proposed Bidding Procedures and the auction process (as approved by the Court in the Bidding Procedure Order) consistent with the requirements of the Bankruptcy Code and the Bankruptcy Rules. Consequently, the fairness and reasonableness of the consideration to be paid by the Stalking Horse ultimately will be demonstrated by adequate "market exposure" and an open and fair auction process -- the best means for establishing whether a fair and reasonable process is being paid.

33.     Based upon the foregoing, the sale of the Subject Property on the terms and conditions set forth in the Stalking Horse Asset Purchase Agreement, subject to the prior approval of HDMC, and pursuant to the proposed Bidding Procedures Order, is fair and reasonable and in the best interest of the Debtors, their creditors, and all parties in interest.

**The Sale of Purchased Assets Satisfies the Requirements of Section 363(f).**

34.     Section 363(f) of the Bankruptcy Code provides:

> (f)     The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

35. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the five requirements enumerated therein will suffice to warrant the sale of the Subject Property free and clear of all liens, claims, interests, and encumbrances (collectively, "Liens"). The Proposed Sale will meet at least one of the Section 363(f)(3) requirements, as will be demonstrated at the Sale Hearing.

36. Accordingly, the Debtor requests that the Subject Property be transferred to the highest bidder free and clear of all Liens with all remaining Liens to attach to the proceeds of the sale in accord with their existing priorities.

**Good Faith Purchaser.**

37. Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal,

> unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m). Although the Bankruptcy Code does not define "good faith purchaser," the phrase encompasses one who purchases in "good faith" and for "value." *In re Ewell*, 958 F. 2d 276, 281 (9th Cir. 992).

38. The terms and conditions of the Stalking Horse Asset Purchase Agreement were negotiated in good faith at arm's length and in good faith. The Stalking Horse does not hold any interests in the Debtor or in any of the Shumate Entities and is not otherwise affiliated with any of the Shumate Entities or any of their members. Moreover, the Stalking Horse is not an "insider" of any of the Shumate Entities within the meaning of § 101(31) of the Bankruptcy Code and is not controlled by, or acting on behalf of, any insider of any of the Shumate Entities. *See, e.g., In re After Six, Inc.*, 154 B.R. 876, 883 (Bankr. E.D. Pa. 1993) (good faith found where officers, directors and employees of debtor had no apparent connection to purchasers). Additionally, the Debtor commits to negotiate any alternative bid at arm's length and in good faith within the meaning of § 363(m). The Debtor will present evidence at the Sale Hearing to prove the foregoing. Accordingly, the Debtor requests that the Court determine the Stalking Horse or, to the extent applicable, an alternative bidder, to be acting in good faith and entitled to the protections of a good faith purchaser under § 363(m) of the Bankruptcy Code.

39.     The Debtor is unaware of any indication of fraud or collusion with other potential bidders or the existence of an unfair advantage to any potential bidder.

## Federal Rule of Bankruptcy Procedure 6004(G)

40.     Bankruptcy Rule 6004(g) provides that an "order authorizing the use, sale, or lease of property…is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Accordingly, the Debtor requests that any order ultimately authorizing the consummation of the transaction contemplated hereunder be effective immediately by providing that the 10-day stay is inapplicable.

## Assumption, Assignment or Rejection of the Leases is Permitted Under 11 U.S.C. § 365 and Termination of the Dealership Agreement is Permitted By 11 U.S.C. § 363(b)

41.     Section 365(a) of the Bankruptcy Code provides that the trustee or debtor-in-possession may assume or reject any executory contract, subject to approval by the court. 11 U.S.C. § 365(a). Section 365(f) of the Bankruptcy Code further provides that a debtor-in-possession may assign an executory contract or unexpired lease if the debtor-in-possession first assumes the executory contract or unexpired lease pursuant to Section 365(a) and adequate assurances of future

performance by the assignee of such contract or lease is provided. 11 U.S.C. § 365(f).

42.     In considering a motion to assume or reject an executory contract, a bankruptcy court "should examine [the] contract and the surrounding circumstances" and ascertain whether the debtor has used its "best 'business judgment' to determine if [the contract] would be beneficial or burdensome to the estate." *In re Gardinier, Inc.*, 831 F.2d 974, 976 n.2 (11th Cir. 1987) (*citing NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) *and Group of Instit. Inv. V Chicago*, 318 U.S. 523, 550 (1943)); *see also In re Orion Pictures Corp.*, 4 F.2d 1095, 1099 (2d Cir. 1993).

43.     The business judgment test affords the trustee or debtor-in possession broad discretion." *In re Orion*, 4 F.3d 1095, 1099 (2nd Cir. 1993). In general, approval of the trustee or debtor-in-possession's decision to assume or reject is only withheld if the debtor's judgment is clearly erroneous, a gross abuse of discretion, or is in bad faith. *Richmond Leasing Co. v. Capital Bank, NA*, 762 F. 2d 1303, 1309 (5th Cir. 1985) (approval withheld only if clearly erroneous); *In re Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1984) (approval withheld only if bad faith or gross abuse of discretion).

44.     The Stalking Horse is now negotiating or will negotiate with the Lessors under the Leases the terms upon which it may lease the premises described

in the Leases or any part thereof. If the Stalking Horse (or Best Bidder at the Auction) agrees that the current Leases should be Assumed in full and Assigned to the Stalking Horse (or Best Bidder), the Debtor will ask the Court to approve such assumption and assignment. If however, the Stalking Horse (or Best Bidder) reaches an alternative agreement or agreements to lease some or all of the premises described in the Leases then the Debtor will ask the Court to approve the rejection of the Leases. Accordingly, the Debtor seeks authority to (i) Assume and Assign the Leases or (ii) Reject the Leases in accordance with the agreements reached by the Stalking Horse (or Best Bidder) and the Lessors.

45.     Good cause exists to permit the Debtor to assume and assign or reject the Leases in accordance with the agreement(s) to be reached between the Stalking Horse (or the Best Bidder) and the Lessors. The Proposed Sale cannot be effectuated without the Assumption and Assignment of the Leases to the Stalking Horse or Best Bidder, or the Rejection of the Leases.

46.     As stated above, § 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The Debtor seeks this Court's authorization to terminate the Dealership Agreement with the mutual agreement of HDMC. This constitutes a use of property of the estate outside of the ordinary course of business of the estate.

47.     As the termination of the Dealership Agreement is conditioned on HDMC's entry into a new dealership agreement with the Best Bidder, the termination of the Dealership Agreement will benefit the Debtor's estate. Accordingly, sound business reasons exist for the termination of the Dealership Agreement.

48.     In the alternative, the Debtor seeks authority to reject the Dealership Agreement pursuant to 11 U.S.C. § 365(a).

Based upon the forgoing, the Debtor requests this Court enter an Order:

(A)     Approving and authorizing the sale of the Subject Property free and clear of all liens of any kind or nature whatsoever, with any such liens attaching to the net proceeds of the sale in the same manner and with the same priority as they attach to the property to be sold, and establishing that the purchaser is not a successor in interest to any of the Debtors, nor shall it have any successor liability therefore;

(B)     Finding that the sales transaction is exempt from any and all applicable sales, use, transfer or other similar taxes or charges of any federal, state, or local governmental agency or department;

(C)     Providing that any orders authorizing the consummation of the sale of the Subject Property be effective immediately by providing that the 10-day stay is inapplicable;

(D)    Providing that after closing costs and any Break-up Fee is paid, all remaining net proceeds shall be held by the closing agent subject to all existing and valid liens and  subject to further order of the court  unless all interested parties in the sale agree to the distribution of the sale proceeds; and,

E)    Approving the Debtor's decision to either (1) assume and assign the Leases and executory contracts to the Stalking Horse or Best Bidder or (2) reject the Leases in accordance with any agreement reached between the Stalking Horse (or Best Bidder) and the Lessors;

(F)    Approving the Debtor's termination of the Dealership Agreements; and,

(G)    Granting such other and further relief as this Court deems appropriate or necessary to effect the consummation of the proposed sale of the Subject Property.

DATED this 30th day of April, 2010.

EWING ANDERSON, P.S.
/s/ David E Eash
By:_____
DAVID E. EASH WSBA #6684
Attorneys for Debtor